## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | |
|---|---|
| LABORANT, LLC, d/b/a ARCPOINT LABS OF CORAL SPRINGS,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHT HEALTH GROUP, INC.,<br><br>Defendant. | Case No. _____<br><br><br>**COMPLAINT** |

Plaintiff Laborant, LLC d/b/a Arcpoint Labs of Coral Springs ("Laborant"), by and through undersigned counsel, brings this action against Defendant Bright Health Group, Inc. ("Bright Health"), and alleges as follows:

## INTRODUCTION

1. During the Covid-19 pandemic, Laborant provided covered COVID-19 testing services to individuals insured by Bright Health. Yet, when the time came to for Bright Health to reimburse Laborant for this testing, Bright Health refused.

2. There is no excuse for Bright Health's conduct. Bright Health should not be permitted to continue enriching itself by refusing to pay medical care providers for covered services.

3. Laborant is owed $356,703.13 for covered Covid-19 testing that it provided to Bright Health's insureds. Having tried—and failed—to collect its outstanding reimbursements, Laborant brings this suit to recover the overdue reimbursements from Bright Health.

1

## THE PARTIES

4. Laborant is a Florida limited liability company with its principal location at 7710 NW 71st Court, suite 110, Tamarac, FL, 33321. Its members are citizens of Florida.

5. Bright Health is a Delaware corporation with its principal location at 8000 Norman Center Drive, Suite 1200, Minneapolis, MN 55437.

## JURISDICTION AND VENUE

6. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the parties are citizens of different states.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## RELEVANT FACTUAL BACKGROUND

8. Laborant provides Covid-19 diagnostic testing through both rapid (Antigen) and standard (PCR) viral tests that are designed to identify current infections of the Covid-19 virus.[1]

9. Laborant provided Antigen testing to patients at a cash price of $149.00 and PCR testing at a cash price of $324.00.

10. From the relevant period of March 3, 2021 to April 10, 2023, patients insured by Bright Health received Covid-19 testing from Laborant on an "out-of-network" basis.

11. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was passed by Congress on March 24, 2020 and signed into law on March 27, 2020.

12. Section 3202(a) of the CARES Act requires payors like Bright Health to reimburse out-of-network providers of Covid-19 diagnostic testing the "cash price" offered by the provider or a "negotiated rate," if one can be reached.

---

[1] https://www.arcpointlabs.com/our-solutions/covid-19-testing/covid-19-viral-testing/

13. Although Laborant has attempted, through extensive efforts, to both recover the "cash price" offered by Laborant and agree to a "negotiated rate" with Bright Health, Bright Health has nonetheless failed to pay Laborant the "cash price" or agree to a "negotiated rate" for the services Laborant rendered to Bright Health's members.

14. The cash price charged and correctly submitted by Laborant to Bright Health for its Antigen and PCR testing is *prima facie* reasonable.

15. Other payors have made payment in full at the cash price.

16. Because Bright Health and Laborant never agreed on a different "negotiated rate," the CARES Act requires Bright Health to pay the cash price for the services which Laborant rendered to Bright Health's members.

17. Under these circumstances, it is illegal, unjust, inequitable, unreasonable, and unfair for Bright Health to continue to refuse to pay the reasonable "cash price" for Laborant's services during the relevant period, and to retain the hundreds of thousands of dollars in profits that Bright Health realized at Laborant's expense.

18. Based on the preceding paragraphs, Laborant brings the following claims for relief:

## COUNT I
### Violation of Florida's Balance Billing Laws, Including Fla. Stat. § 627

19. Laborant incorporates by reference paragraphs 1 to 18 of this complaint as if fully set forth herein.

20. Bright Health is an insurer governed by Chapter 627 of Florida statutes.

21. During the relevant period, Laborant and Bright Health have not had a written contract between them governing the rates at which Bright Health must reimburse Laborant for nonemergency services provided to Bright Health's members.

22. All of the claims at issue in this count are for medically necessary, covered services rendered during the relevant period to persons who are covered under a health insurance contract delivered or issued for delivery by Bright Health in Florida.

23. Fla. Stat. § 627.64194(4) requires that insurers, such as Bright Health, reimburse out-of-network healthcare providers, such as Laborant, for qualifying nonemergency services provided to Bright Health's members in accordance with the provisions of Fla. Stat. § 641.513(5).

24. Likewise, Fla. Stat. § 627.6472(8) prohibits insurers from "restrict[ing] payment for covered services by nonexclusive providers if: (a) The services are … immediately required for an unforeseen illness, injury, or condition; and (b) A network provider is not reasonably accessible."

25. Pursuant to Fla. Stat. § 641.513(5), nonparticipating providers, such an Laborant, are entitled to reimbursement for qualifying nonemergency services rendered in an amount equal to the lesser of the provider's charges, the "usual and customary provider charges for similar services in the community where the services were provided," or "[t]he charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim."

26. Laborant has not reached an agreement with Bright Health regarding any charges within 60 days of the submittal of the claims at issue in this action. Therefore, under Florida law, Laborant is entitled to reimbursement of the lesser of its charges or the "usual and customary provider charges for similar services in the community where the services were provided" (*i.e.*, the fair market value of the services).

27.     For each nonemergency claim during the relevant period at issue, Bright Health failed to pay Laborant in an amount equal to the lesser of the provider's charges, the "usual and customary provider charges for similar services in the community where the services were provided," or "[t]he charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim," as required by Fla. Stat. § 641.513(5).

28.     Accordingly, Bright Health has failed to reimburse Laborant for the nonemergency services that Laborant has rendered to Bright Health's members in accordance with Fla. Stat. § 641.513(5). Bright Health has therefore violated Fla. Stat. § 627.64194(4).

29.     Laborant seeks compensatory damages, as permitted by applicable law, in an amount equal to the lesser of the provider's charges or the usual and customary provider charges for similar services in the community where such services were provided, plus interest thereon at a rate of 12 percent per annum under Florida's prompt pay statute, Fla. Stat. § 627.6131(7).

## COUNT II
## Unjust Enrichment

30.     Laborant incorporates by reference paragraphs 1 to 18 of this Complaint as if fully set forth herein.

31.     Laborant conferred a benefit directly upon Bright Health by providing Covid-19 diagnostic testing to Bright Health's members. Bright Health derived a direct benefit from Laborant's provision of these services to Bright Health's members because it is through Laborant's provision of those services that Bright Health fulfills its obligations to its members, discharging Bright Health's contractual obligation or responsibility to provide access to, or to provide, these services to its members.

5

32. Bright Health members paid Bright Health insurance premiums to cover the cost of healthcare services obtained from out-of-network providers, beyond the cost of any applicable patient cost-sharing amounts.

33. By not paying Laborant for the services Laborant provided to Bright Health's members, Bright Health has realized these benefits at Laborant's expense.

34. Bright Health has knowingly and voluntarily accepted, retained, and enjoyed the benefits conferred upon it by Laborant because, among other things, Bright Health has received Laborant's claims for such services, has significantly underpaid, or refused to pay, Laborant for services rendered by Laborant, and has failed to pay Laborant the "cash price" or a "negotiated rate" for the services Laborant provided. Bright Health has done so knowing that Laborant expected to be paid the "cash price" or a "negotiated rate" for its services, and Laborant is entitled to payment for those services as required under Section 3202(a) of the CARES Act, requiring payors like Bright Health to reimburse out-of-network providers of Covid-19 diagnostic testing the "cash price" offered by the provider or a "negotiated rate."

35. During the relevant period, Bright Health was aware that: (1) Laborant was an out-of-network provider for Bright Health's members; (2) Laborant was entitled to and expected to be paid its billed rate and/or fair, reasonable, usual, and customary rates for its services; and (3) Laborant has not agreed to accept the discounted rates offered from Bright Health.

36. Bright Health's actions have resulted in a windfall for Bright Health, in that Bright Health profited at Laborant's expense by failing to pay Laborant for the healthcare services rendered.

37. In short, Laborant conferred a valuable benefit on Bright Health.

38. Bright Health acknowledges that it was conferred a benefit.

6

39. Bright Health acknowledges that it is required to reimburse *some* amount for properly submitted claims.

40. But Bright Health has refused to reimburse the cash price to which Laborant is entitled, and has only offered to reimburse a tiny fraction of what it owes.

41. By underpaying and refusing to pay for Covid-19 testing for its insureds, Bright Health has enriched itself at Laborant's expense.

42. Under these circumstances, it would be inequitable for Bright Health to fail to reimburse Laborant the "cash price" or a "negotiated rate" of the healthcare services it rendered to Bright Health's members, while retaining the benefits Laborant conferred upon Bright Health.

43. Laborant has no remedy other than this lawsuit to recover for Bright Health's unjust enrichment for failing to reimburse Laborant for the "cash price" for the services Laborant rendered to Bright Health's members during the relevant period.

## COUNT III
## Quantum Meruit

44. Laborant incorporates by reference paragraphs 1 to 18 of this Complaint as if fully set forth herein.

45. Laborant conferred a benefit directly upon Bright Health by providing valuable healthcare services to Bright Health's members in the form of Covid-19 diagnostic testing.

46. Bright Health knew that Laborant expected to be compensated for these services.

47. Bright Health also knew the amount that Laborant expected to be compensated for these services because Laborant published the cash price for its Covid-19 diagnostic testing.

48. Bright Health is therefore liable in quantum meruit to Laborant for failing to reimburse Laborant for the billed rate or the usual, customary, and reasonable rates for the services Laborant rendered to Bright Health's members.

## PRAYER FOR RELIEF

WHEREFORE, Laborant requests that the Court grant the following relief:

a. Enter judgment in favor of Laborant, and against Bright Health;

b. Award Laborant damages incurred as a result of Bright Health's wrongful conduct during the relevant period;

c. Award Laborant attorney's fees and costs, as available;

d. Award Laborant pre-judgment and post-judgment interest; and

e. Award Laborant all other relief to which it may be entitled, including restitution, disgorgement of ill-gotten profits, and punitive and/or treble damages.

Date: January 5, 2024                    By:    */s/ Daniella R. Lee*
                                                                                         Daniella R. Lee
Florida Bar No. 0124528
Epstein Becker & Green, P.C.
201 East Kennedy Boulevard, Suite 1260
Tampa, FL 33602
dlee@ebglaw.com
Ph: 813-367-9440
Fax: 813-367-9441

*Counsel for Plaintiff
Laborant, LLC*